IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THE TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY a/s/o KENT AND KIMBERLY ROUSE<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC.<br><br>Defendant;<br><br>JONATHAN VESEY,<br><br>Subpoena Respondent | Miscellaneous Case No:<br><br><br><br><br>Underlying Case:<br><br>Northern District of Illinois<br>Civil No. 1:12-cv-02386<br>District Judge Frederick J. Kapala<br>Magistrate Judge P. Michael Mahoney |

### DEFENDANT'S MOTION TO COMPEL DEPOSITION OF JONATHAN VESEY

Defendant Electrolux Home Products, Inc. ("Electrolux") has been forced to take an unnecessarily circuitous route to obtaining the deposition of a senior employee at Plaintiff Travelers Property Casualty Insurance Company ("Travelers")—an employee, it bears noting, that plainly has knowledge relevant to this dispute, as, despite not being an attorney, his name appears on all but two entries in Travelers' privilege log, including several direct communications with the subrogors in this matter—and it hopes the games might finally end here. The underlying case is a subrogation matter pending in the Northern District of Illinois, alleging that the Electrolux clothes dryer in the home of Travelers' insureds (Kent and Kimberly Rouse) was defective and caused a fire. The employee at issue is Jonathan Vesey, by all accounts a senior official in Travelers' subrogation department. And, like any party with potentially relevant information, Electrolux simply wishes to take his deposition to determine what he knows that might be of consequence to the claims or defenses at issue in the underlying matter, or whether anything he knows might lead to the discovery of admissible evidence.

In various contexts, Travelers has asserted objections to allowing Mr. Vesey to testify, and made clear that he would not be produced in view of those objections, but none of the asserted objections, as noted below, support the extraordinary relief of precluding a deposition from taking place. If Mr. Vesey's counsel believes there to be a sound legal basis—including the existence of a privilege—for instructing him to refuse to answer a question, those objections can be raised on a question-by-question basis at the deposition, after affording Electrolux sufficient opportunity to probe the basis for the privilege. But Electrolux is aware of no authority under which Travelers can claim the right to prevent the deposition from taking place, and Travelers has cited none. Indeed, the weight of authority in this Circuit is directly to the contrary. The deposition should be ordered without delay, and Travelers should be required to compensate Electrolux for the fees and costs incurred in bringing this Motion.

**Factual Background**

The factual background underlying this discovery dispute is remarkable only to the extent that it demonstrates the lengths Travelers seems willing to go to prevent a witness with discoverable information from responding to a lawful subpoena.

- Electrolux's counsel, Matthew Kramer sent a deposition notice to Travelers' counsel, Robert Spinazzola, on January 9, 2013, seeking Mr. Vesey's deposition on February 6, 2013. A true and correct copy of the Notice is attached hereto as Exhibit A.

- On January 22, 2013 while discussing another matter, Mr. Spinazzola indicated, first, that Mr. Vesey would need to be subpoenaed, and, second, that Travelers would not allow him to testify in any event, purportedly on grounds that his testimony was precluded by the attorney-client privilege and work-product doctrine. A true and correct copy of this correspondence is attached hereto as Exhibit B.

- Mr. Kramer responded shortly thereafter on January 22, and asked Mr. Spinazzola if, particularly given his statement that Mr. Vesey would not testify even after he is properly served, Mr. Spinazzola would simply accept service of a subpoena on Mr. Vesey's behalf, to save Travelers the burden and expense of serving a subpoena that was not going to be honored. Mr. Kramer also urged Mr. Spinazzola to reconsider Travelers' outright objection on the basis of privilege, suggesting that, if anything, such objections could be raised at the deposition, after allowing Electrolux to inquire about the basis for

- the privilege claim. A true and correct copy of this correspondence is attached hereto as Exhibit C.

- Later that day, Mr. Spinazzola responded, stating that he was not authorized to accept service of a subpoena on Mr. Vesey's behalf, and that, even after Electrolux incurred the expense of serving him at his place of business, Travelers would still not allow him to be deposed, again citing vague concerns over privilege and work-product. A true and correct copy of this correspondence is attached hereto as Exhibit D.

- Electrolux eventually served Mr. Vesey with a subpoena at his office. A true and correct copy of the proof of service is attached hereto as Exhibit E.

- Upon service, Travelers filed a Motion to Quash the subpoena in the Northern District of Illinois. A true and correct copy of that Motion is attached hereto as Exhibit F. That Motion was denied from the bench, based on a lack of jurisdiction over the subpoena, as it issued from this Court.

## **Argument**

For any of several reasons, Travelers' efforts to prevent one of its employees from even sitting for a deposition—despite, if the privilege log is to be believed, his apparently significant involvement in this matter—are entirely without legal basis. This extraordinary relief is almost impossible to obtain under the Federal Rules of Civil Procedure, particularly on nothing more than a blanket claim of privilege (over a non-attorney's testimony, no less) like Travelers asserts here. The deposition that Electrolux seeks is eminently appropriate, and the Court should order it to proceed. Moreover, Travelers should be sanctioned for its unjustified obstruction.

**I.      Preventing A Deposition From Proceeding Is Almost Never Appropriate.**

As Travelers should be aware, it is nearly impossible to justify an objection to allowing a deposition to proceed. Courts that have considered the issue have repeatedly sided with the party seeking discovery, consistent with the Federal Rules' clear preference for liberal discovery. *See, e.g.*, *Johnson v. Jung*, 242 F.R.D. 481, 482 (N.D. Ill. 2007) (ordering deposition of defendant's senior executive, stating "[c]ontrary to the common law's sporting theory of justice…the Federal Rules of Civil Procedure provide for liberal discovery"). Courts are particularly hostile to

attempts to preclude a deposition in its entirety. In *Affiliated FM Ins. Co. v. Neosho Const. Co., Inc.*, No. Civ. A. 98-2414-KHV, 1999 WL 445704, at *3 (D. Kan. June 24, 1999), the court summarized the appreciably high burden that Travelers would have to meet in order to prevent a deposition from proceeding:

> Plaintiff has likewise shown no good cause to prohibit the depositions. It faces a difficult task to convince the court that there is good cause for prohibiting a deposition in its entirety. Due to the broad scope of discovery, "it is ***exceedingly difficult*** to demonstrate an appropriate basis for an order barring the taking of a deposition." *Naftchi v. New York Univ. Med. Ctr.*,172 F.R.D. 130, 132 (S.D.N.Y. 1997); *see also, Leighr v. Beverly Enterprises–Kansas Inc.*, 164 F.R.D. 550, 552 (D. Kan. 1996); *Land v. United Tele. S.E., Inc.*, No. Civ.A. 95–MC–220–KHV, 1995 WL 128500, at *5 (D. Kan. Mar. 22, 1995). "An order barring a litigant from taking a deposition is ***most extraordinary relief***." *Speadmark, Inc. v. Federated Dep't Stores, Inc.,* 176 F.R.D. 116, 117 (S.D.N.Y. 1997). Courts "rarely grant a protective order which totally prohibits a deposition, unless ***extraordinary circumstances*** are present." *Mike v. Dymon, Inc.,* 169 F.R.D. 376, 378 (D. Kan. 1996). This court has characterized such a prohibition as a "***drastic action***." *Deines v. Vermeer Mfg. Co.,* 133 F.R.D. 46, 48 n. 3 (D. Kan. 1990)

(emphasis added) (ordering, among other things, a 30(b)(6) deposition of the subrogee plaintiff). As detailed below, Travelers has no basis for precluding the Vesey deposition from taking place.

**II.     Mr. Vesey Clearly Has Discoverable Information**.

Not to be lost in the discussion of the legal standards governing Travelers' efforts to resist producing Mr. Vesey for a deposition is the fact that he plainly has discoverable information about this lawsuit. On January 29, 2013, Travelers submitted its privilege log to Electrolux, reflecting, by definition, the existence of documents responsive to Electrolux's requests for production, but as to which Travelers claims some privilege excusing disclosure. A true and correct copy of the privilege log is attached hereto as Exhibit G. The log contains thirty-two entries, two of which relate to receipts that contain information protected from disclosure under the Health Insurance Portability and Accountability Act (HIPAA). Of the remaining thirty entries, Mr. Vesey's name appears in all but two. Perhaps most tellingly, the

- 4 -

log reveals that Mr. Vesey had several direct communications with the insureds in this matter, evidently assisting in the preparation of affidavits that each of them signed. Setting aside whether the documents included on the log are legitimately privileged—and, as will be addressed shortly in the underlying matter, the privilege log, as drafted, is nowhere near sufficient to sustain such claims, particularly as to the communications with the insureds—any suggestion that Mr. Vesey does not possess responsive information is untenable. He clearly played a central role in facts giving rise to this lawsuit, and Electrolux's request to take his deposition is entirely appropriate.

Additionally, though it should be apparent from the threadbare privilege log—which, again, will soon be the subject of further meet-and-confer efforts, and, potentially, a motion to compel in the underlying matter—Travelers is entitled to no presumptions about the extent to which Mr. Vesey's testimony would actually be protected by the attorney-client privilege or work-product doctrine. It seems likely that Travelers has failed to appreciate that not everything in which Mr. Vesey might be involved in his capacity as a subrogation specialist is entitled to work-product protections. In the context of insurance companies, the Seventh Circuit requires a careful distinction between documents generated in the ordinary course of business by parties whose business necessarily requires "an eye towards possible litigation," and those that are legitimately prepared because of an "articulable claim" that has arisen. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996) ("While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between 'an investigative report developed in the ordinary course of business' as a precaution for the 'remote prospect of litigation' and materials prepared because 'some articulable claim, *likely* to lead to litigation has arisen.'") (emphasis in original) (citations omitted). Travelers has yet to proffer anything suggesting that the supposed privileges it relies

- 5 -

on were the product of that mandatory analysis with respect to privilege in the subrogation context. As detailed below, even were Mr. Vesey an attorney, compelling his deposition would still be the appropriate remedy, but the Court should not treat Travelers' unfounded claims of privilege as to Mr. Vesey—reflected on its privilege log and otherwise—as being indicative of any equivalence between this issue and an attempt to compel an attorney's deposition. This is a much simpler issue, and Mr. Vesey should be required to be deposed.

### III. Blanket Claims Of Privilege Are Not Permitted.

Given its obvious inability to claim a lack of relevant knowledge on Mr. Vesey's part—an insufficient objection in its own right—Travelers refuses to make him available based on vague and unsubstantiated claims of privilege. This is simply not a sufficient basis for resisting a deposition in its entirety. Indeed, an entire body of law in the Seventh Circuit has evolved on the issue of whether ***a party's counsel*** can be deposed, and that comes down squarely on the side of requiring the deposition to proceed, with the objecting party raising privilege objections on a question-by-question basis.

*Hunt Int'l Resources Corp. v. Binstein* is a leading case on this point. 98 F.R.D. 689 (N.D. Ill. 1983). There, the court considered a motion to quash a deposition subpoena issued to an attorney, and concluded that the proper procedure would be to allow the deposition to proceed. The court stated that "completely preventing the taking of a deposition [based on claims of privilege or work product] would tend to limit or fix the scope of the examination before it began, and would usurp the court's role in deciding whether certain questions seek privileged information." *Id.* at 690. "The more appropriate method," according to the court, would be to "allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary." *Id.* The court recognized that the privilege issues that could be implicated made the question a more difficult one, but concluded that disallowing the

- 6 -

deposition in its entirety—or, to use the court's characterization, to issue a "***prior restraint*** of the testimony of the attorney as to *any matter*"—would raise "even more troublesome issues." *Id.* at 690-91 (emphasis in original). The court recognized, ultimately, that efforts to quash the deposition were based on assumptions that are contrary to the Federal Rules:

> To afford the extraordinary relief requested by movants would require this Court to make two unwarranted assumptions of fact. First, we would have to assume that ***everything*** [the attorney] would testify to in his deposition would be a matter subject to the attorney-client privilege. Second, we would have to assume further that [the attorney] in some instances would fail to invoke the attorney-client privilege when asked questions concerning privileged matters. There is no factual basis at this time to conclude that either of these assumptions would be warranted in this matter.

*Id.* at 691 (emphasis in original). Such assumptions are even less warranted here, where Mr. Vesey is not even an attorney. Even viewing Mr. Vesey's status in the best light, however, and indulging the assumption that some, or even most, of what he knows might be protected from disclosure as privileged, the law in the Seventh Circuit is that privilege objections must be made on a question-by-question basis, and prior restraints on depositions will not be permitted. *See, e.g.*, *United States v. Bernhoft*, 666 F. Supp. 2d 943, 948-49 (E.D. Wis. 2009) (noting that "the Seventh Circuit generally forbids blanket assertions of privilege") (citing *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990)); *Nat'l Labor Relations Bd. v. Modern Drop Forge Co.*, 108 F.3d 1379 (7th Cir. 1997) (unpublished) (adopting the *Hunt* rationale and finding the procedure "even less troublesome" where ordering the deposition poses no threat to the attorney-client relationship). The Court should reject with prejudice Travelers' absurd blanket objection that every thought, fact, or mental process in the mind of a non-attorney is protected by the attorney-client privilege and/or attorney work-product doctrine, such that he cannot even be made to sit for a deposition and have his counsel assert those objections on question-by-question basis.

**IV. Travelers Should Be Sanctioned For Its Obstruction.**

As detailed above, Travelers' objections to producing Mr. Vesey for a deposition were entirely without legal basis. And it is important to make clear that these are ***Travelers'*** objections. Given the opportunity to force Electrolux to incur the burden and expense of serving the subpoena, Mr. Vesey was treated as a third party, but, since that time, Travelers has acted in every respect as if this were a discovery request served on itself, refusing to "allow" Mr. Vesey to testify, and communicating its baseless objections through its counsel in the underlying matter. So any pretense that Mr. Vesey is entitled to greater leeway (or greater protections) as a so-called "third-party" should be disregarded.

The principles outlined above are far from novel or controversial. Travelers knew or should have known that blanket privilege objections would have been dubious even were an actual attorney involved, and to continue to assert those objections as to a non-attorney borders on the frivolous. Moreover, as stated, the objections are even more egregious in view of the substantial involvement that Mr. Vesey obviously had in this matter, with his name appearing on nearly every document—again, by definition, documents responsive to Electrolux's requests—over which Travelers claims privilege (however disingenuously). Finally, when such groundless objections are viewed in the context of the hoops that Travelers made Electrolux jump through to obtain even the most basic discovery, sanctions become the appropriate remedy. *See, e.g.*, *Affiliated FM*, 1999 WL 445704, at *4 (ordering party resisting deposition subpoenas to show cause why they should not be sanctioned under Rule 37); *Rickles v. City of South Bend, Indiana*, 33 F.3d 785, 786 (7th Cir. 1994) (noting that Rule 37 "presumptively requires every loser to make good the victor's costs").

Discovery is not a game to be won, and the rules and procedures are designed to bring relevant facts to light, not to enable one party to prevent such facts from even being discussed.

The Court should award Electrolux the fees and costs incurred in bringing a motion that should never have been necessary in the first instance.

## Conclusion

For all of the reasons discussed above, Travelers should be ordered to produce Mr. Vesey for a deposition at a time and location of Electrolux's choosing, subject only to reasonably accommodations for Mr. Vesey's schedule and the limitations on venue imposed by Rule 45 of the Federal Rules of Civil Procedure. Moreover, Travelers should be responsible for paying the fees and costs that Electrolux incurred in bringing this Motion.

Dated at Milwaukee, Wisconsin this 7th day of February, 2013.

s/ Joseph M. Fasi, II
Joseph M. Fasi, II, SBN 1006655
ATTORNEYS FOR DEFENDANT
ELECTROLUX HOME PRODUCTS, INC.
Gonzalez Saggio & Harlan, LLP
111 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
Telephone: 414-277-8500
Fax: 414-277-8521
Email: joseph_fasi@gshllp.com

and

Michael J. Summerhill
Matthew J. Kramer
Salvador A. Carranza
FREEBORN & PETERS LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Tel: (312) 360-6382
Fax: (312) 360-6594
msummerhill@freebornpeters.com
mkramer@freebornpeters.com